Good morning, Your Honors. My name is Al Bruzos. I'm representing Mr. Barry Levinson, the appellant in this matter. May it please the Court, as I review this matter, I was trying to figure out a way how to put it in perspective. And I think there's three issues that will put it in perspective if I join them together. Number one is community banks and the Newell defendants' failure to comply with FRCP 11 and being granted sanctions against Mr. Levinson. Number two, what I would call the Mr. Levinson and the John Baldwin dilemma. And the dilemma was caused by the fact that when initially Mr. Baldwin filed an appropriate Rule 11 sanctions motion because he had previously served an unfiled motion upon Mr. Levinson, Mr. Levinson at that time discovered also that he had a conflict. So now Mr. Levinson is allowed to withdraw by the district judge. Mr. Baldwin's motion for sanctions is denied without prejudice to allow the parties to conduct discovery. Months later, eight months, nine months later, two other attorneys enter into the picture. And what should have Mr. Baldwin or Mr. Levinson have done by that point? Well, that's the dilemma. Mr. Baldwin gets an award of sanctions based on his earlier motion after Mr. Levinson had withdrawn. I think to solve the Levinson and Baldwin dilemma, it would have been appropriate for the court, or at least for Mr. Baldwin, to renew his Rule 11 sanctions motion against subsequent counsel by sending out an unfiled Rule 11 motion. Then subsequent counsel, who ironically enough wanted to dismiss the case because they felt that in their investigation there wasn't enough to support the federal causes of action, the matter would have been dismissed earlier than later. Okay. But here's the problem. If assume accepting this as a frivolous complaint and meritless up through whenever Mr. Levinson was relieved as counsel, why should he escape liability as counsel for the wrong that was committed by him, not by the existing counsel, but by him up to the point of his withdrawal? Because his withdrawal was premised on a basis of conflict. Yes, but we don't know what the conflict was, and there's no evidence in the record you can disabuse me if I'm wrong, but there's no evidence that his withdrawal was the result of an ethical dilemma. And indeed, I think the record indicates that he was opposed to dismissing the complaint. Is that correct? Yes. And I'll explain how those two follow in. First of all, Mr. Levinson felt that discovery would have shown, at least with respect to the RICO claims, facts to support it. Ironically enough, both successor counsels said the same thing. When faced with motions to, I'm sorry, motions for summary judgment, both subsequent counsel, Mr. Mitchell and Mr. Dreisen said, please give us time, give us 30 days, give us additional time on the 56F to conduct discovery, because we believe there was RICO violations. You're wandering away from my question, because you are positing this dilemma. I agree there's a dilemma, but Rule 11 contemplates that if there is a finding of frivolity, and I want you to accept that part of it for now. You can argue, to the extent it's even relevant, what others thought. But in terms of Mr. Levinson's activities, let's assume that he filed a frivolous – knowingly challenged, he then withdraws. And the case goes on for a little bit longer, and then new counsel do withdraw the complaint. Why should a counsel in Mr. Levinson's position escape sanctions for his conduct for the interval of time when he was counsel in control of the litigation, when there is no evidence in the record to reflect that his withdrawal was, to be precise, because he went to his client and said, they are right, you should withdraw the complaint, client refuses, and then Mr. Levinson is left with what choice? That's the big question in this case. What choice did he have? I assume that one of them would have been to say, I can't proceed as your counsel, I will withdraw as counsel, which I will call an ethical withdrawal. There's no evidence, as I see it in the record, that that's what Mr. Levinson did, however. The reason there's no evidence in the record is because the judge took the matter at a sidebar and sealed it. It was an ethical dilemma. It was a conflict that had arisen during the case that Mr. Levinson, because of the conflict, could not take a position either one way or the other. He took, so that was the dilemma. He was not precluded at the OSC hearing from putting that evidence forward, was he? He believed he was, as a matter of fact. Was there any proffer to the court? Earlier on, when he withdrew, it was mentioned to the court in an oral argument at the order to show cause hearing, he had just said, may I say something, and he was arguing, he was arguing that the court may cause issues with respect to attorney-client privilege, and it didn't proceed. Then that's a problem of perhaps his own making. I'm just trying to understand the structure here. Rule 11 clearly contemplates that a court can defer ruling on a motion for sanctions to avoid the very problem being talked about, that is surfacing attorney-client communications, and so that may or may not have been what the reason for deferring in this case was. But it seems to me, coming back to your opening comment about this dilemma, that is the dilemma I have been troubled by in this case, is what is the attorney to do? If the attorney in good faith finds out that he has filed a frivolous action, he's got the opportunity to take some corrective action. But when he's no longer attorney, thereafter there's no corrective action that I see he can take, but he should not escape, it seems to me, sanctions for whatever occurred prior to the time he withdrew, unless his withdrawal was the corrective action that Rule 11 would contemplate as sufficient to avoid the sanctions. And that brings me back to my concern that there's no evidence that that was the nature of his withdrawal. Right. And the only thing that's before this court, as a matter of the record, is the discussion that was just in the Judge Hunt's order, that he saw that there was a conflict. But of course, the very trial judge who imposes the sanction is well aware of whatever this conflict is, and at the Order to Show Cause hearing, there was nothing that prevented Mr. Levinson from saying, well, you know, this sidebar we had in the seal record, I'd like to talk about this. Yeah. He mentioned it in barely one sentence. I think he should have developed it at that point and may have reminded the court about the conflict. In the absence of anything on the record here, or in the absence of any record at the Order to Show Cause hearing, even in front of the district judge, sealed or otherwise, that Mr. Levinson is saying, listen, I made reasonable efforts to get my client to withdraw, what are we supposed to do? I mean, we know the black letter rule is that counsel cannot avoid Rule 11 sanctions simply by withdrawing from representation. That we know. Right. Right. So he has to have made whatever are reasonable efforts under the circumstances to correct the violation, even after he is no longer acting as counsel. But there's nothing in this record to tell us that he did anything. Now, of course, he may have been greatly constrained in terms of what he could have done, but there's simply nothing in the record to show that he did anything. When he withdrew, the question was, what could he have done at that point? He's no longer counsel of record. There's a conflict. He can't even step in and say, this is what I recommend, this is what I don't recommend. It's an ethical dilemma for him. And that's why I called it as a dilemma, not only for Mr. Levinson, but also a dilemma for Mr. Baldwin. Because Mr. Baldwin is the only defendant that complied with Rule 11 pursuant to Barbara Radcliffe. He's the only defendant that submitted a pre-filed motion for Rule 11 sanctions. So his dilemma was the same. Now that this attorney withdrew, there's a new one. What do I do? Well, I think, as you say, there's no evidence of what motivated him or what he did. But at a minimum, it seems to me, he could have made his exercises, judgment as counsel, reacted and decided to recommend to the client in writing, making a record of it, and if the client declined the advice, then ethically withdraw it. That's the record. And then presumably, we'd be looking at a different record in a different kind of case. Right. Right. Or at the May 27, 2003 hearing, he could have simply stated, there's no longer ‑‑ I no longer believe there's an adequate basis, legal basis for the complaint. Well, do you agree with that? Yes, I do. I do. At May 27, when the case was still going forward? When May 27, when the case was still going forward, at that option, he could have said, I believe that, with respect to the civil rights action, there's no reason for the complaint. With respect to the ‑‑ I'd like to be sure I understand. You're saying that if I am counsel or withdrawn as counsel, if I'm no longer counsel, you are saying that I can confess error, notwithstanding my client's instructions to the contrary? No. I'm saying that if you're asking him to either reaffirm or affirm a complaint personally, without implicating attorney‑client privilege, I think that's a narrow line, and it's a fine distinction that can be done, but you can't confess error and I believe blame it on your client or raise anything that arises from attorney‑ client privilege. I think as a personal matter, I believe from what I could read from the defendant's oppositions is they just wanted him to reaffirm, not to reaffirm the original complaint. But this would be a different case if Mr. Levinson at the order shall cause hearing had said, Your Honor, I'm in a fix. I can't tell you what I told my client because of attorney‑client privilege. But he didn't say that. I know. And that's why I called it a dilemma, because looking in hindsight, I said, what do we do now? How do we fix this? How do we undo it? And that's the community bank in Newell. I don't know if the court will agree, but they didn't follow Barber and Radcliffe, so that's, as I can see it, non‑issue with respect to the issuance of those sanctions. That should be reversed. But what do we do about the sanctions that were issued to Mr. Baldwin, which, if this court does act, they were reasonable. Why don't we hear from the other side, and you've got a fair amount of time reserved, and we can probably do best hearing from them, and then we'll hear from you again. Thank you. Good morning. My name is Gordon Warren. I'm with the law firm of Jones Vargas in Las Vegas, Nevada. I represent the appellee, John Baldwin. With me today is Mr. Albright, representing Community Bank of Nevada, and we'll be splitting our time today. Although the appellant has presented three issues for review for this court, only one issue concerns our client, John Baldwin, and that is whether the district court abused its discretion in granting our Rule 11 motion for sanctions against Mr. Levinson. We submit that the district court did not abuse its discretion because Mr. Levinson stated that his factual contentions had evidentiary support and that existing Federal law warranted the civil rights and legal claims that he filed against our client. Mr. Levinson was given the opportunity to dismiss these claims before the Rule 11 motion was filed. Indeed, Mr. Levinson and his counsel have admitted to that effect. However, as the district court stated, the claim was made, the claim was filed, the challenge was made, and the challenge refused. We'd even written letters to him prior to filing the motion asking him to either give us evidence that our client was guilty of these charges or dismiss the claims. Instead, he filed a First Amendment complaint. In short, the district court found that the appellant had not conducted a thorough investigation that was not reasonable and competent under the circumstances. The appellant has argued that the district court should not have granted sanctions to Mr. Baldwin after it initially denied the motion and after Mr. Levinson had withdrawn from the case. There are some problems with that argument. First of all, the court denied our motion without prejudice. Second, the court, as Mr. Levinson agreed, found that we had met the Rule 11 21-day notice requirement. Third, the court reserved its final ruling on that motion. And fourth, retained jurisdiction over Mr. Levinson for purposes of that motion, and indeed gave our client permission to refile that motion if, in the event we've discovered and confirmed there was no evidence supporting those two claims. Your evidence of what you were claiming for the time period that Mr. Levinson was in the case was limited to that time period. Is that correct? In other words, what would Mr. Levinson have done post his withdrawal as counsel? After he was through as counsel? In other words, the sanctions, there were these large attorney fees that totaled between the three claimants, about $100,000, and as I understand, $12,000 was awarded. Right. Only $12,000 was awarded. $12,000. Of the amount that you put in on behalf of Mr. Baldwin, did any of that were incurred after Mr. Levinson left as counsel? Some of it was incurred, I believe, after he left, but most of it was incurred prior to this time. And are you taking any position today on whether Mr. Levinson had any ability to do anything by way of corrective action once he was no longer counsel? Our position today, Your Honor, is that Mr. Levinson had 15 months after he filed that minute complaint, first minute complaint. I'm talking about after he withdrew as counsel. After he withdrew as counsel, of course, he could do nothing at that point. That's all. That was all I wanted to know. Okay. And that is also part of his argument as well, Your Honor, that he has implied that he was sanctioned because the new counsel for the Holgates did not carry out discovery that the district court had generously granted them. Well, there are three flaws to that argument. First of all, regardless of the district court's allowance of discovery, before ruling finally on our Rule 11 motion, the focus under Rule 11 is what counsel knew at the time that the complaint was filed, not what might be later revealed in discovery. And secondly, the Holgates new counsel did not require discovery to determine that their clients could not file a civil rights action under Section 1985. It was clear to them and to everybody else for that matter, and probably Mr. Levinson as well, that they did not belong to a protected class. The purpose of discovery is to complete the factual basis of the claim. It is not an excuse to allege claims with no factual basis. And that's what was done in this case. Just filing a civil rights claim alone, I think, would have been enough to merit Rule 11 sanctions. It was so amorphous, there was no reason to file it in the first place. Now, finally, Mr. Levinson filed a RICO claim against our client, alleging mail fraud without any evidence that Baldwin had used the mails, alleging wire fraud without any evidence that Baldwin had used the wires in front of the scheme of the without showing any connection between Baldwin, hard money funding, and the Holgate loan. And that basically, Your Honors, is the only connection that Mr. Levinson could have made with Mr. Baldwin, claiming that he had some kind of connection with hard money funding, that Internet site and so forth, which he has denied, of course. The appellant, in fact, admitted in his opposition to our Rule 11 motion, he stated, and I quote, plaintiffs were unable to discover, prior to filing the complaint, what participation John Baldwin had, if any, with hard money funding. Well, if that was the case, then why accuse him of a RICO violation? A plaintiff's new counsel recognized that that RICO claim was not warranted by existing law or by the establishment of new law, and they knew that they had no evidence to support that claim. And so they chose, to their credit, not to conduct a phishing expedition. The Supreme Court has held that the central purpose of Rule 11 is to deter baseless filings. This Court has held that an attorney must conduct a reasonable inquiry into the facts and the relevant law. Mr. Levinson did neither. The District Court properly fulfilled the Rule's purpose. Its ruling was based on a correct view of the law and a correct assessment of the evidence, and the order of the District Court granting Rule 11 sanctions against Mr. Levinson should be affirmed. Thank you. Unless you have any questions, I'm finished. Thank you very much. And your co-counsel will thank you for an extra 15 seconds. Good morning, Your Honors. May it please the Court, my name is D. Chris Albright. I represent Defendant Below, Appellee Community Bank of Nevada. I would certainly join in Mr. Warren's statements and the statements made in my other co-appellee's brief with respect to the substantive grounds for Rule 11 sanctions in this case. Let me cut to the crux of the procedural argument that's been raised against Community Bank of Nevada, which goes to the 21-day safe harbor provision of Rule 11. Rule 11C1A, when it discusses this 21-day safe harbor, contains some parenthetical language that says, or such other period as the Court may prescribe. In this particular case, what we had happen is we had on May 12th, it was issued on May 8th, but on May 12th, the clerk of the lower court sent us an order from the judge that basically invited certain conduct within five days. And basically it said, I'm going to hold a show cause hearing, and I'm going to address whether the defendants should get fees or costs in this case. And I'm also now dismissing the federal claims of the plaintiff with prejudice, but I'm retaining jurisdiction over them, over their current attorney, over their former attorney, for purposes of discussing costs and fees. And it was within that context of that invitation from the court that we went ahead and filed a motion for Rule 11 sanctions, which is the motion that was ultimately granted. And we were forthcoming with the court, and we said, because of this five-day limit that you've given us, Your Honor, this motion was not served more than 21 days ago. However, we pointed out to the court that many more than 21 days before that, many months before that, and in fact on a couple of different occasions, prior motions for Rule 11 sanctions have been served by the parties upon Mr. Levinson and had been ruled upon by the court in a manner which suggested that the court would someday be amenable to hearing those. Okay. Just so I understand the sequence, though, did Community Bank file anything against Mr. Levinson while he was still counsel? No. So you're basically, what you're relying on is that Baldwin and the Newells had already given notices to the alleged defects in the complaint, and you get to piggyback on that notice. That, and we had also served a motion for Rule 11 sanctions against Mr. Levinson, but it was after he was no longer counsel. Let me ask the question I asked of the counsel. What would you, was there anything Mr. Levinson could or should have done after his withdrawal that would have had anything to do with Rule 11 sanctions at that point? Well, I think what he could and should have done is to monitor the case, to keep in touch with the Holgate's new counsel, and to let that new counsel know if you decide to withdraw because of these Rule 11 sanctions that are out there hanging over all of our heads, including my own, please let me know, and perhaps I will join in that. What he did instead was to defiantly come into court on the day of the show cause hearing and continue to insist that if he were the attorney for the Holgate's, by golly, he would still be pursuing these frivolous federal claims, and that he shouldn't be sanctioned because this other attorney is... I didn't quite understand. Monitor and then do what? And then join in any voluntary dismissal that the plaintiffs decided to... His standing at that point. Well, his standing would be the fact that the court at the very beginning of the case had retained jurisdiction over him for the purpose of considering future motion for Rule 11 sanctions against him. He wouldn't be in a position to make an informed judgment post his withdrawal about whether or not would he, unless he voluntarily, the client gave him information. I'm just trying to understand what an attorney who is no longer counsel to a client can do. Now, I agree, we've already discussed things he might have done, but for him to join or to do anything else, he could come into court, I take it, and express his views at that point as to why he didn't do something before withdrawal, but I don't understand his joining in a motion that we should hold him at fault, in other words, that we should hold him at fault for not having taken some action that he might ethically or factually not be in a position to do. Again, Your Honor, I recognize that there is that dilemma. I would simply suggest that doing something to agree with what the other counsel ultimately decided, that these claims had no merit, would have given him some protection against Rule 11 sanctions, as opposed to continuing to defiantly represent that these were good faith causes of action that should continue to be pursued. If, in fact, that procedural problem with the standing of the case prevents Rule 11 from being the proper authority for sanctioning Mr. Levinson, it's nevertheless true that as a result of this initial pleading, which Mr. Levinson filed, Community Bank expended a lot of money defending a federal case. That case has now been refiled. The state court parts of that case have now been refiled against Community Bank and state court. That's even now ongoing. We don't agree with each other on very much over there. But one thing we all agree on is that the federal case was a huge waste of all of our time and all of our money and all of our energies. And that came about as a result of what Mr. Levinson did. If Mr. Levinson's withdrawal keeps Rule 11 from applying to him, then I would suggest that this court perhaps. Well, no, wait a minute. Wait a minute. You're jumping ahead. We're trying to talk about Community Bank, which filed its motion after he left. OK. The other parties were able to take action against him while he was still counsel. You're in the position of having taken your Rule 11 actions post his withdrawal. So basically, as I say, you have to piggyback on the others. And I'm trying to assess or understand what Rule 11 contemplates. The way these sanctions are allocated, Baldwin was given $3,000, you were given $4,000, and the Newell's were given $5,000. So in terms of who gave notice at the appropriate time, you're in the middle. And so the question is, that comes to my mind, if I'm an attorney receiving a notice from one of three defendants that my complaint is frivolous, I might assess the case one way. If it's all three defendants coming at me, I might assess it a different way. Is there anything we should take into account under Rule 11 to say, you know, Levinson has been unfairly prejudiced by the fact you didn't sound off before he left the case and could do something about it? Do you understand what I'm driving at? I do, Your Honor. And I think the only way to answer that question is to look at it from the other perspective, which is, we have no idea at the beginning of the case, we file a motion to dismiss. Our motion to dismiss apprises Levinson of the problems with his federal claims. We have no way of realizing that he's going to jump in at the last second and withdraw. And so we're put in a situation where now we're being told, okay, because you didn't file on time, because you didn't guess or predict or know that Levinson was going to get out of the problems that he's causing you by withdrawing, your right is now cut off to seek sanctions against the attorney whose complaint is the very pleading which has cost you all of this money. How long after he withdrew, did you file your motion? The motion that was ultimately granted was filed in May, so I would say some eight months. Yeah, he withdraws August 22nd, 02. You file February 3rd, 03. That was a motion that was not granted. We filed, the one that was granted was in May of 03. But your first filing is February. Yeah. And I think... And at that point, what's he supposed to do? He's no longer counsel. Can he withdraw any of the pleadings? Well, and I guess the question is, what are we supposed to do? Maybe file earlier. We've spent all this money defending against this case, which now the plaintiffs have finally conceded themselves should never have been filed, and yet the guilty party, the attorney who originally filed it and pursued it, has cut us off from any remedy against him by withdrawing before we had gotten around to filing a rule of law and motion against him. You know, it's interesting, Mr. Levinson cites Hecathorne in his documents, and one of the things that this circuit did in Hecathorne, they reversed the sanctions, but then they looked and they said, is there some other grounds on which these sanctions might have been warranted, for example, under the inherent authority of the court? And they said in that case where the court had expressly found there was no bad faith, there was no other grounds that would warrant those sanctions. I think if you were to engage in the same sort of analysis here as to whether because of the Rule 11 problems there wasn't some other grounds on which sanctions shouldn't have been allowed to community bank, that you would arrive at a different result. The sanctions under Rule 11, if it's on sua sponte motion of the court, would go to the court. The sanctions wouldn't go to the party. Well, you know, perhaps the answer to that dilemma would be to remand to allow us to come up with alternative grounds for such sanctions. 1926. Let me just ask a quick question. I couldn't find any case directly on point with respect to the subsequent motions. And I read the advisory committee notes on the 1993 amendments that say Rule 11 authorizes court if requested in a motion and is so warranted to award attorney's fees to another party. I guess you would fall into that category. But have you found any case in our circuit that would assist us? Or would this be a case of first impression? No, Your Honor. I do believe this is a case of first impression. It's a very unusual situation. You have an attorney who has a couple of people file Rule 11 motions against him. They're not granted at that time. But jurisdiction is retained over that attorney to look at those again. And then he withdraws before one of the other defendants who's also being victimized by that initial filing has gotten around to filing a motion for Rule 11 sanctions. And that would be the case. But I thought he withdrew and all of that happened on the same day, didn't it? That's right. So it wasn't as if you had two co-parties who filed before any of that. So, I mean, I don't understand retaining jurisdiction. He's out at that point. Okay. Thank you. Thank you. Thank you. Revetal. Thank you, Your Honor. In light of your questioning, Justice Fischer, I would like to clarify the record. And I believe it makes a difference. The Newell defendants that are to Baldwin Trust never filed a Rule 11 motion for sanctions. They joined. They joined. Prior to that joinder, they never served a separate motion as required under Rule 11. So the only defendant that served a prefiling Rule 11 motion is John Baldwin. What would have been gained from Mr. Levinson's standpoint if they had done, instead of just joining, had gone through the drill themselves? As a practical matter, the conflict would have still been there. He would have had to withdraw. But in terms of the procedures, this case, at least procedurally under Rule 11, is a quagmire. We have a situation where the rule requires a prefiling service of motion. One defendant does it. That's Baldwin. The Newell defendants file a joinder. Then after ---- Well, Levinson knows he's got two of them claiming ---- He's got two of them, but ---- On the same ground. The circuit here has said Barber and Radcliffe. So, yes, you have two, but nobody's following the rules. And then you wind up ---- Baldwinus. Excuse me? Baldwinus. Baldwinus. And then you have Community Bank filing a separate motion for sanctions well after four to five months later, and then a hearing. Now, the order to show cause is not one of the sua sponte Rule 11 issues. It's actually pending motions. So that's the basis ---- As they say, he exercised his authority to set it on shorter notice than ---- Yes. Yes. But since Rule 11 wasn't complied with, then at least the sanctions should be reversed. With respect to Mr. Baldwin and as far as Mr. Levinson's advocacy at the contempt at the order to show cause, sorry, hearing, he explained he needed the discovery and why. As I looked at the record, we saw that Mr. Newell, who is also a trustee of the Newell Trust, I'm sorry, of the Baldwin Trust, is the person who lends the money. However, in the early motions for summary judgment, John Baldwin's motion says, Mr. Newell rented space from me as hard money funding. I had nothing to do with it. So here you have a trustee of a trust, the John Baldwin Trust, Mr. Newell as an individual, and Mr. Newell as hard money lending, not having anything to do with Mr. Baldwin. In other words, that's the discovery that Mr. Levinson wanted to conduct to show that there was a pattern of conduct. Thank you. Thank you very much. The case of Holgate v. Baldwin is now submitted for decision. We'll take a 10-minute break and then we'll reconvene and hear the last two cases on the calendar, Avalos and Merced. All rise. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Are you Mr. Brooks? I'm sorry? Are you Mr. Brooks? No, I'm not. It's because of my seat. No, it's because you're one of the few people left here. No. No. Mr. Bowles is here. What do you want with the case?  I want to talk to you about the last one. Uh-huh. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Are you both? Yes. mice  Well, what it doesn't mean is that they're nice to warm. They have their own world. You want the community to be nice to you. Oh, yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.   Yeah. Yeah. Okay. Okay. Yeah. Yeah. Yeah. Yeah.  Yeah. Okay. Yes. Yeah. Okay. Okay. Yes.  Okay. No. All rise. This part now is a moving section. Please restrain yourself. All right. We are now back in session, and we have two more cases on this morning's calendar.
judges: D.W. Nelson, W. Fletcher, Fisher